Ogodziski v. Gara, 173 Wis. 371.

*January 14—February 8, 1921.*

*Assault and battery: Interruption of religious service: Question for jury: Removal of persons claimed to be causing disturbance: Use of excessive force: Burden of proof as to degree of force used: Evidence: Wealth of defendants: Punitive damages: Testimony of physician as to patient's history of ailment: Curing error committed in trial: Prejudicial remarks of counsel.*

1. In an action by a church organist against the pastor of a church and others for injuries sustained by his wife when she was removed from the organ loft after he had been discharged from his employment, he and his wife refusing to leave the church on demand of the pastor until he was paid what was owing to him, the question whether he and his wife on the occasion in question were guilty of molesting and interrupt-

ing a religious service when they declined to leave the organ loft of the church on request of the pastor is for the jury.

2. The evidence showing the manner of the removal of the wife from the organ loft when she and her husband refused to leave not harmonizing, and the alleged injuries the treatment is claimed to have caused her permitting of different inferences, the question whether or not defendants used excessive force in evicting her from the organ loft is for the jury.

3. Where plaintiff charged an assault and the excessive use of force in the removal of his wife, and defendants contended that what they did was lawful and that they used no more force than was necessary, instructions placing the burden of proof on defendants to show that they used only reasonable force, instead of on plaintiff to show that they used unreasonable force, are erroneous and prejudicial.

4. Where a doctor visited the wife at the request of attorneys and prescribed for her, he could testify that he took the history of her ailment that she gave him into consideration but could not testify to the facts she so stated, except as to facts describing the existence of pain.

5. Communications sent by the defendant pastor to the wife, apparently pertaining to matters concerning the relationship of plaintiff and his wife as parishioners, organist, and members of the choir, were incompetent; and this court seriously questions whether the court's instruction to the jury that such evidence was improperly received and that they must disregard it cured the error in admitting it.

6. Where two or more defendants are sued jointly for punitive damages arising out of a tort, evidence as to the wealth of the defendants is not competent. *McAllister v. Kimberly-Clark Co.* 169 Wis. 473, followed.

7. Remarks of plaintiff's counsel in summing up the case to the jury to the effect that all the witnesses for the defense were communicants of the Catholic church, blindly subservient to their priest, against whose instructions they would not think of testifying, are prejudicial, and were not cured by the mere suggestion of the court to disregard them.

APPEAL from a judgment of the county court of Trempealeau county: RANDOLPH A. RICHARDS, Judge. *Reversed.*

This action was brought by the plaintiff to recover damages based upon a claim of assault and battery upon his wife, Mary Ogodziski. Plaintiff and his wife came to the village of Independence, Wisconsin, from Philadelphia on July 1, 1919. From July 1, 1919, until August 31, 1919,

Ogodziski v. Gara, 173 Wis. 371.

plaintiff acted as organist in the Polish Catholic church of which defendant *Gara* is pastor, and plaintiff's wife sang in the choir. On the morning of August 31, 1919, after a disturbance, plaintiff's wife was evicted from the church by defendants *Marsolek* and *Skroch* by order of defendant *Gara*. Plaintiff claims that up to the time of this eviction his wife had been a strong, healthy woman; that on August 31, 1919, she was nineteen years of age and had been for several months pregnant with child; that the defendants wilfully and maliciously and without cause or provocation assaulted her, bruising and beating her; that by reason of this assault she suffered a miscarriage; that ever since she has been confined to her bed, her health impaired and her mind permanently affected. Damages were demanded by the plaintiff in the sum of $10,000. Defendants' answer asserts that *Adam* and Mary Ogodziski had voluntarily associated themselves as members of the congregation and as such were bound by the jurisdiction of the officers of such church and by the rules and regulations of the church and canon law; that on the morning in question they conducted themselves in a disorderly manner that required and justified their eviction from the church; that defendants *Marsolek* and *Skroch* as officers of the church evicted Mary Ogodziski solely so that the religious services interrupted by her might proceed; that in so doing defendants acted in discharge of their official duties and used towards her no force other than was reasonably necessary to perform their duty; that if in an effort to resist the exercise of the lawful orders of the church she sustained an injury, the same was of her own infliction and without fault of the defendants.

The case was tried before the court and a jury. The jury rendered a general verdict, finding for the plaintiff, and awarded plaintiff the sum of $3,000 as compensatory damages. Judgment was entered for plaintiff against the defendants jointly and severally in the sum of $3,000 and costs. This is an appeal from such judgment.

*Jesse E. Higbee* of La Crosse, of counsel, and *John Kulig* of Independence and *Ole J. Eggum* of Whitehall, attorneys, for the appellants.

For the respondent there was a brief by *Cowie & Hale* of La Crosse and *John A. Markham* of Independence, and oral argument by *Mr. R. S. Cowie, Mr. Quincy H. Hale,* and *Mr. Markham.*

SIEBECKER, C. J.    It is contended by the defendants that the court erred in refusing to hold as a matter of law that the plaintiff and his wife, on the occasion in question, were guilty of molesting and interrupting a religious service when they declined to leave the organ loft of the church at the request of the *Rev. Gara,* who was in charge of the services.    It appears that plaintiff and his wife refused to turn over the keys to the organ when *Rev. Gara* requested them to do so on Saturday, the day preceding the alleged assault. This request by *Rev. Gara* was made for the purpose of permitting one Volski, an organist, to play on the organ preliminary to negotiating for his engagement as organist of the church in plaintiff's place.    The evidence shows that plaintiff had been engaged as organist for the church from the first Sunday in July and that he had not been discharged from this engagement.    The by-laws of the church provide that the organist cannot be discharged without the consent of the bishop.    At 8 o'clock mass on the Sunday morning of August 31st plaintiff and his wife appeared and occupied the organ bench for the purpose of furnishing the organ music and participating in the choir service.    *Rev. Gara* came to the organ balcony and requested them to leave the organ bench so that Volski might play the organ; this they refused to do unless plaintiff then and there received full compensation for his services as organist.    The interview resulted in their staying at the organ.    No music was furnished for the 8 o'clock service.    The next service was a high mass service at 10 o'clock.    At the appointed time

Ogodziski v. Gara, 173 Wis. 371.

plaintiff, his wife, and their little child were again present occupying the organ bench. . Rev. Gara again came to the organ balcony and requested them to leave the bench and organ balcony. . They again refused unless they were paid in full for plaintiff's services; whereupon one of the church trustees tendered plaintiff a check in payment of what the trustees considered due him. This plaintiff refused to accept upon the ground that it was insufficient and he refused to vacate the organ bench. Rev. Gara then directed them to leave the place, and upon their refusal to do so called upon the trustees present to remove them. They did not remove them. Plaintiff and his wife persisted in remaining in their places at the organ and with the choir, whereupon Rev. Gara called upon defendant Marsolek as church marshal and the defendant Skroch to remove plaintiff's wife, who had taken the more active and aggressive stand against Rev. Gara's requests and directions to leave the organ balcony. Marsolek and Skroch took hold of plaintiff's wife and forced her to the stairway leading from the balcony to the church floor, where others interfered and she was released. She returned to the balcony. The evidence is not without conflict as to what took place between Rev. Gara and plaintiff's wife on the occasion of the 10 o'clock service and as to who took the aggressive in the colloquy and as to the acts and conduct of the respective parties. As stated, plaintiff had not been discharged from service. That Rev. Gara did not desire his presence was known to plaintiff and his wife, but their presence under the circumstances cannot be held in law to be an unlawful act. It appears they did nothing to interrupt the religious service before Rev. Gara appeared in the balcony and that they were ready and willing to proceed with the organ and choir music in the usual manner. Rev. Gara's presence at the organ and his demands that they leave led to the verbal altercation and the forcible removal of plaintiff's wife. The facts and circumstances disclosed by the evidence are not sufficiently clear and free from conflict to determine

as a matter of law that plaintiff and his wife were guilty of causing the disturbance of the religious service and to authorize the wife's forcible removal from the church. We think the court properly submitted this issue to the jury for determination.

The court submitted to the jury the inquiry whether or not the defendants used an excessive and unreasonable amount of force in evicting plaintiff's wife from the organ balcony. The evidence showing the manner of her removal does not harmonize, and the alleged injuries this treatment is claimed to have caused her permit of different inferences and hence must be resolved by the jury. It is further contended that the overwhelming preponderance of the evidence established that plaintiff's wife did not have a miscarriage as is claimed by her. She and plaintiff testify positively to a state of facts which, if true, tend to support her claim. Her ill health following this assault is a condition, in the opinion of experts, that may have been caused by a miscarriage. In their opinion her forcible removal by defendants might so affect her as to produce miscarriage. In view of these consequences and the positive evidence of plaintiff and defendant on this subject, this issue of fact was properly submitted to the jury.

It is also claimed that the court committed prejudicial error in its instruction to the jury on the burden of proof. The court directed the jury as follows:

"In order for the plaintiff to recover in this action, the burden is upon him to satisfy and convince you, by a fair preponderance or greater weight of evidence, that his wife, Mary Ogodziski, conducted herself in a proper and orderly manner at said church meeting and was not the cause of the disturbances which arose in the balcony of said church meeting on the day in question; and if you are further satisfied and convinced by the fair preponderance or greater weight of evidence that the defendants were not so justified in evicting said Mary Ogodziski, then her eviction by force was an assault and battery for which the defendants must answer."

The court further instructed:

"The burden of proof is upon the defendants to satisfy and convince you, by the fair preponderance or greater weight of evidence, that the defendants were so justified in evicting Mary Ogodziski, *and that no more force was used than was reasonably necessary* in doing so, and if you are so satisfied and convinced, then plaintiff is *not entitled* to recover and your verdict must be for the defendants."

These instructions do not harmonize, but the effect of them is clearly to put the burden of proof upon defendants that they were justified in evicting plaintiff's wife from the organ balcony and that they used no more force than was reasonably necessary to remove her.

It is strenuously urged that this instruction states the rule of burden of proof correctly. This claim is based on the case of *Monson v. Lewis,* 123 Wis. 583, 101 N. W. 1094. That case turned upon the fact whether or not plaintiff or defendant was in the rightful possession of a scraper when the blow was struck for which damages were claimed by plaintiff. It is there declared that in an assault and battery, where the blow and the damages it caused are admitted, it devolved upon defendant to show that the assault was justifiable. We have no such state of admitted facts in this case. Here the assault and the excessive use of force upon plaintiff's wife as charged in the complaint are denied by the defendants. It is their contention that what they did was lawfully done upon direction of *Rev. Gara,* who was in charge of the church service and had the right to maintain order, and that they used no more force in removing plaintiff's wife from the balcony than was necessary. The issue thus presented required that plaintiff show, in order to establish his cause of action, that he and his wife did not disturb the church service, and if the jury found they did disturb such service then the burden was on him to show that defendants used an excessive amount of force in evicting her from the church on account of such unlawful disturbance. The in-

structions above quoted erroneously placed the burden on the defendants instead of the plaintiff. The effect of such error necessarily misled the jury, and in a hotly contested case like this one necessarily prejudiced the defendants in their rights. We cannot say upon the record that this error did not materially affect the verdict.

The defendants excepted to a number of other instructions given. These exceptions are called to our attention, but the grounds of prejudice asserted respecting them amount to no more than a criticism in phraseology and suggestions that defendants' request for instructions on the same point should have been substituted. We do not find the exceptions of sufficient importance to review them here.

It is contended that the court erred in admitting improper and immaterial evidence. It is urged that Dr. Thompson testified to the condition of plaintiff's wife when he visited her at the request of the attorneys in the latter part of September, 1919. The doctor prescribed for her. This made it proper to state that he took such history of her ailment as she gave him into consideration. But he cannot testify to the facts she so stated, excepting those facts describing existing symptoms of pain. We do not regard his testimony as shown by the record to be prejudicial in its nature and import. It is claimed by plaintiff that *Rev. Gara* sent communications to plaintiff's wife. Whether or not such alleged communications arose out of their controversy respecting plaintiff's services as organist is not clear. It is claimed by defendants that no such communications were sent. It is not shown that anything of an improper nature was communicated, nor do the facts and circumstances permit of such an inference. The trial court became convinced before the case was submitted to the jury that this was not competent evidence and instructed them that it was improperly received, and that they must disregard and treat it as though not received. The court did all it could to cure the error, but we seriously question that the mischief done by receiving it

could thus be cured. Of course this error will not be committed on a retrial.

Evidence of defendants' wealth was admitted on the question of punitory damages claimed by the plaintiff. In a case where two or more defendants are sued jointly for damages arising out of a tort, evidence of defendants' wealth is not competent. *McAllister v. Kimberly-Clark Co.* 169 Wis. 473, 173 N. W. 216. On this point we refer to the case of Mary Ogodziski against these same defendants arising out of the transaction involved in this case and decided herewith (*post,* p. 380, 181 N. W. 231).

Exception is taken to the remarks of plaintiff's counsel in summing up the case to the jury. The following is reported as a part of the exceptioned remarks: "By this claimed injury to the mother, the little child of the plaintiff [then in court] must go through life without the loving care and attention of a mother. . . ." The remarks further alleged that all witnesses for the defense were communicants of the Catholic church, who from earliest infancy had been taught blind obedience to the commands of its priests, and that each of them was in court as a witness for the defense upon the command, under the restraint, and subject to the influence of *Gara,* the priest, which they had felt from their cradles, and not one of them would think of testifying differently than as their priest had commanded; that all the powers of the Catholic church had been asserted to defeat the rights of the plaintiff and justice at the trial.

It requires no comment to show that the facts asserted in this summing up are not justified by the record. The effect of such comment was necessarily prejudicial when made to a jury composed of Protestants. It is common knowledge that the religious emotions are easily aroused, and that when aroused to the prejudice of a party the reason readily yields to such prejudice and naturally prevents a jury from acting deliberately and fairly upon the issues they must determine. We are compelled to hold that these remarks of counsel were

prejudicial and that the mere suggestion by the court to disregard them was wholly ineffectual to remove the prejudice engendered by them, under the facts and circumstances in this case.    These remarks constitute prejudicial error in the trial of the case.

Other alleged errors have been examined, but we do not deem it necessary to treat them.    A new trial of the case must be had upon the foregoing considerations.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with direction to grant a new trial.