Krudwig, Respondent, vs. Koepke, Defendant: Kaehne, Appellant.

*November 11—December 8, 1936.*

For the appellant there was a brief by *Reilly & Cosgrove* of Fond du Lac, and oral argument by *Frank W. Cosgrove*.

*A. D. Sutherland* and *S. Richard Heath,* both of Fond du Lac, for the respondent.

FOWLER, J.   The appellant contends that, (1) his motion
for a nonsuit should have been granted because there was no
allegation in the complaint or proof in the evidence of a con-
spiracy; (2) that his motion to change the answer to ques-
tion 5 of the verdict and dismiss the complaint as to him
on the amended verdict should have been granted; that the
court erred, (3) in instructing and in failing to instruct the
jury, and (4) in permitting improper argument to the jury.

(1), (2) The allegation of the complaint is that "Al
Koepke and Anton Kaehne assaulted and violently beat the
plaintiff." It is true that this implies that both the defend-
ants were present and personally took part in the assault and
battery and carries no implication that Kaehne procured or
intentionally caused the commission of the assault, or that
there was any conspiracy between defendants that Koepke
should commit an assault and battery upon Krudwig.   How-
ever, all the facts that had any bearing upon these matters
were in evidence without objection.   Under this state of the
record the court might have properly submitted a verdict
covering either one of these theories if the evidence war-
ranted findings in their support.   The opinion of the trial
judge forcibly sets forth his view that the evidence did
warrant the inference that Kaehne incited the assault, and
we cannot say that his conclusion in that regard was erro-
neous.   He submitted the case upon the theory that, if
Kaehne incited Koepke to commit the assault, he was re-
sponsible.   Had the case been properly submitted upon this
theory we would not interfere with the judgment.   But the
action of assault and battery involves an intentional wrong.
There is nothing in the questions submitted to the jury or
in the instructions given to call attention to the point that to
render Kaehne responsible he must have *intended* by what
he said to Koepke to cause him to commit an assault and
battery.   The court instructed in connection with the ques-
tion whether Kaehne "incited" the assault that, "when a per-

son not present when the assault was committed, is sought to be charged, . . . he must have done something which led directly to" its commission. This warranted the inference by the jury that, if what Kaehne said caused Koepke to commit the assault, he is responsible for it, even though he did not intend it to have such effect. The features of Kaehne's conduct essential to render him subject to liability for an assault committed by Koepke are stated in the Restatement of the Law of Torts as follows:

"§ 5. *Subject to liability.* The words 'subject to liability' are used . . . to denote the fact that the actor's [Kaehne's] conduct is such as to make him liable for another's injury, if the actor's conduct is a *legal cause* thereof." Legal cause as involved in "Intentional Harms" is defined in section 279. "If the actor's [Kaehne's] conduct is *intended by him* to bring about bodily harm to another which the actor is not privileged to inflict, it is the legal cause of any bodily harm of the type *intended by him* which it is a substantial factor in bringing about."

The omission to direct the jury to the point that to render Kaehne responsible he must have intended by what he said to cause Koepke to commit an assault upon Krudwig would have entitled Kaehne to a new trial had he moved for a new trial on that ground. Ordinarily, a motion for a new trial directed to the trial court is necessary in order to move this court to direct it. See Callaghan's Wis. Dig. and Suppl. Title, Appeal and Error, § 117. However, the court may consider a point not so raised. *Braasch v. Bonde,* 191 Wis. 414, 418, 211 N. W. 281; *Stierle v. Rohmeyer,* 218 Wis. 149, 165, 260 N. E. 647; *Cappon v. O'Day,* 165 Wis. 486, 490, 162 N. W. 655. This court has the power under sec. 251.09, Stats. 1935, when it appears that the real issue has not been tried or that it is probable that justice has not been done, to order a new trial of the case on a proposition not raised below. *Dupont v. Jonet,* 165 Wis. 554, 558, 162

N. W. 664. We consider that this should be done in the instant case.

The only question of the verdict material to the point of Kaehne's responsibility is that inquiring whether Kaehne "incited" or "abetted" Koepke in committing the assault. The word "abet" is not appropriate, under the evidence, but the word "incite," if qualified by the word "intentionally," would properly enough raise the question of Kaehne's responsibility if the instructions did not unduly broaden the meaning of the question. The court instructed the jury that they must determine whether Kaehne "invited or encouraged" Koepke to make the assault. If Kaehne invited the assault, in the sense of asking Koepke to commit it, and Koepke pursuant to the invitation committed it, this would amount to inciting it, but, if what Kaehne said merely "encouraged" Koepke to make the assault. without intention on Kaehne's part that it should have that effect, Kaehne not being present at the time of the assault, this would not fix responsibility upon him.

Another instruction was to the effect that, if Kaehne "aided, abetted, counseled, or encouraged" Koepke to make the assault, he was responsible. The words "aiding and abetting," although harmless in the instruction, appropriately apply, generally at least, only to "those persons who, although not the direct perpetrators of a crime, are yet present at its commission, doing some act to render aid to the actual perpetrator." 1 Bouvier's Law Dictionary (Rawle's 3d Rev.) 168. But for the correlative "encouraged" in this instruction, the word "counseled," meaning "to advise or recommend," might be stretched into implying intent on Kaehne's part to incite Koepke to commit an assault, but we perhaps should not impute to the jury discrimination so acute as to read out of it such meaning. On the whole, we are satisfied that the question and the instructions taken together did not

give the jury to understand that intention on Kaehne's part to incite Koepke to commit an assault was necessáry to warrant an affirmative answer to the question respecting inciting it.

(3) The appellant claims that the court invaded the jury's province by implying in his instruction as to damages that Krudwig suffered bodily and mental pain, that he sustained a personal injury, and that he sustained physical disability as a result of the assault and battery. The reference to physical disability should under the evidence have been qualified by the phrase "if any." Perhaps that as to "mental pain" should also have been so qualified. The evidence shows that Krudwig must have suffered some bodily pain and some personal injury.

Plaintiff offered evidence as to Kaehne's wealth, which was shown to be considerable, as going to punitive damages. Receipt of this evidence was recognized during the trial in the absence of the jury as erroneous, under the rule of *Lehner v. Berlin Publishing Co.* 211 Wis. 119, 246 N. W. 579. Conference between court and counsel was had as to how to avoid its working prejudice. It is claimed that the trial judge should have instructed the jury to disregard this evidence. Under the colloquy respecting the matter disclosed by the record he should have done so, although his failure to do so of itself would seem not to have been so prejudicial as to warrant a new trial.

(4) It is also urged that counsel for the plaintiff was permitted to read in arguing the case to the jury portions of an adverse examination that were not offered in evidence. On objection being made, the trial judge stated that he did not remember whether the portions were offered in evidence or not, left the question of their receipt to the jury, and permitted counsel to continue his reading. The jury could hardly be expected to remember if the judge did not. Coun-

sel should not have read from the deposition unless he knew that what he read was offered and received in evidence. He did not so know, for according to the record it was not received. In such a situation, counsel should not have been permitted to read from the deposition until he had shown by the record that what he read was in evidence. Reading what is not in evidence might in some conceivable circumstances necessitate reversal, although in the instant case it does not appear that the erroneous reading was prejudicial.

*By the Court.*—The judgment of the circuit court is reversed. The record is remanded and a new trial ordered.