MICHELS, Respondent, v. GREEN GIANT COMPANY, Appellant.

*No. 108. Argued January 8, 1969.—Decided February 4, 1969.*
(Also reported in 164 N. W. 2d 217.)

428

For the appellant there was a brief and oral argument by *Joseph D. Donohue* of Fond du Lac.

For the respondent there was a brief and oral argument by *E. W. Hooker* of Waupun.

CONNOR T. HANSEN, J.  In granting judgment on the verdict, the trial judge neither analyzed any particular evidence nor gave reasons to support his rulings on motions after verdict. Over the years this court has many times indicated that on review this was unfortunate, not only from the standpoint of the parties but also in determining the weight to be accorded to the findings of the trial judge. The trial judge has the benefit of personal observation. We can only read from the transcript.

"Under this state of the record, we place no weight upon the judge's findings; and we look to the evidence *ab initio* to determine whether, resolving all conflicts in the testimony in a light most favorable to the respondent, there is any credible evidence to support the verdict of the jury." *Ostreng v. Lowrey* (1968), 37 Wis. 2d 556, 561, 155 N. W. 2d 558.

### Apportionment of Negligence.

"The general rule is that a jury's findings as to negligence apportionment will be sustained if there is any credible evidence that, under any reasonable view, supports such findings." *Barber v. Oshkosh* (1967), 35 Wis. 2d 751, 754, 151 N. W. 2d 739.

This is true even though had this court been members of the jury, the negligence may have been allocated otherwise. *Barber, supra,* at 754.

The propriety of the negligence apportionment turns on whether there is credible evidence to support the jury's verdict finding that the defendant failed to properly instruct the plaintiff as to reasonable caution to be taken by him for his own safety.

The plaintiff was injured on the first day he worked with the equipment that injured him. The appellant claims that prior to plaintiff's injury he was warned not to act in the manner which resulted in his injury. Plaintiff asserts that no warning was given.

Plaintiff, aged eighteen, was a truck driver employed by B & B Auto Service of Ripon. The corn picker-dumper was a large machine. The dumping cart alone weighed about 4,000 pounds when filled with corn. The operator of the machine controls the lifting, dumping and lowering of the corn cart. Raising the cart takes about a minute-and-one-half, and lowering it to its resting position requires the same amount of time.

The plaintiff testified that on his first trip to have his truck loaded with corn that day he did not pick up any spilled corn. On the second trip, Mr. Hollander, the "Area fieldman" for the defendant, told the plaintiff to use the kicking procedure to prevent damage to the spilled corn. Hollander then got between the truck and the machine to demonstrate.

The plaintiff further testified that Hollander neither told him where to place his hand to support himself while kicking, nor instructed plaintiff that he should not kick

the corn while the cart was in a raised position. The plaintiff also testified that Hollander gave his demonstration while the corn cart was in an elevated position and did not give him any safety instructions or tell him not to go between the vehicles when the cart was in a raised position.

Much of the testimony of Mr. Hollander contradicts that of the plaintiff. He testified that on the morning of the day of the accident he saw the plaintiff go between his truck and the machine while the cart was in a raised position. Hollander then "went in and took him [plaintiff] by the shoulder and took him out in front of the truck and told him not to go in there again" because "it was very dangerous, a hydraulic hose could break or a tire blow out or tip over." Then, after the cart was down in its resting position, he gave his demonstration.

However, Hollander did testify that due to the noise created by the machinery he did not know if the plaintiff even heard his safety instructions. He also testified that plaintiff would have to put his hand on either the truck or machine to support himself while kicking the corn and that he did not instruct the plaintiff on where to place his hands when kicking the corn.

The record reflects that the operator of the machine was eighteen years of age and had only worked on that type of equipment for two or three days. The operator testified that he had been instructed not to lower the cart while anyone was standing between the truck and the machine; he knew it was a hazardous, dangerous situation; he could have seen the plaintiff if he had looked; he did not see the plaintiff between the vehicles nor did he try to see if anyone was there; and that he could have stopped the descent of the cart at any moment if he had seen the plaintiff.

The appellant claims that the machine operator's attention had to be on the corn cart in its descent in order to avoid damage to the truck. The plaintiff testified he

did not realize that the cart had begun to descend as his eyes were on the spilled corn on the ground.

In this case, the matter of the apportionment of negligence was within the province of the jury and after examining the record we conclude that there is credible evidence to support the verdict.

## Damages.

"Where damages are the subject of review on appeal, this court adheres to the view that the amount awarded is largely in the discretion of the jury. Only if the award is so excessive as to evidence that the award resulted from passion, prejudice, corruption, or disregard of the evidence or applicable law will the damage verdict be set aside." *Ostreng, supra,* at 560.

## Personal Injury.

The jury awarded plaintiff $9,000 for the injury to his hand. Appellant requests that this court exercise its authority under *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393, and reduce the amount found by the jury to $4,500.

The uncontradicted testimony of plaintiff's doctor is that the plaintiff suffered permanent injuries of a 75 percent loss to the fourth finger of his right hand, a 25 percent loss to the right hand (he is right-handed), and a five percent disability of the whole body function. The doctor testified that the five percent total disability was a "small disability" to the body as a whole.

The accident occurred August 10, 1963. The trial was November 30, 1967.

The plaintiff is able to participate in football, basketball, baseball, tennis and golf. However, he testified he still has pain when he grasps certain equipment or when his hand is jarred. Also, he still has pain when he drives, from grasping the steering wheel; when he hammers or

saws; when he writes for an extended period of time; or when he types on a nonelectric typewriter.

While $9,000 is a large sum of money to award for the injuries the plaintiff sustained, we do not consider the sum awarded excessive.

The plaintiff has a long life expectancy, and although the injuries he sustained are not too serious he does have a permanent disability. We are of the opinion that there is credible evidence to support the verdict of the jury.

*Loss of Earnings and Expenses.*

It was stipulated, in open court, between the parties that the plaintiff's wage loss for the late summer and fall following his accident was $812.50, and that he incurred travel expenses in the amount of $266.80.

The jury awarded the plaintiff $2,410 for loss of earnings.

There is no evidence that the plaintiff will suffer any future loss of earnings. At the time of trial, he was completing his last semester of college. He had a position as a social worker awaiting him upon graduation at a salary of $540 a month.

However, it is undisputed that the plaintiff's injury delayed his graduation from college by one semester, four months.

The appellant submits that the jury instructions told the jury to include future loss of earnings with the permanent injury item of damages. However, we are of the opinion that the personal injury and loss of earnings items of damages were sufficiently differentiated in the instructions.[1]

---

[1] "In answering this question, you will insert such sum of money as you are satisfied will fairly and reasonably compensate Charles Michels for such pain and suffering and such impairment of health, physical ability and bodily functions (and for such disfigurement) and for such impairment of earning capacity as

In addition to the immediate loss of earnings due to his injury, the jury was instructed to consider impairment of earning *capacity* "suffered to date" and reasonably certain to be suffered "in the future." The instruction as given referred to all the damage items in question six of the special verdict: (a) doctor bills, (b) loss of earnings, (c) transportation expenses incurred for treatment of injuries, and (d) personal injuries.

The fact the plaintiff's graduation from college was delayed for one semester as a result of the injury and that he had a position awaiting him upon graduation at a salary of $540 a month is a reasonable basis upon which the jury could reach its determination as to loss of earning capacity suffered to the date of the trial, and affords credible evidence to support the jury's determination.

Question 6(c) of the special verdict was answered by the jury as follows: "As Stipulated In Court." The question relates to the plaintiff's transportation expenses. On defendant's appeal, the plaintiff seeks review of the judgment to include 90 percent of the transportation expenses, which were stipulated at the trial to be $266.80.

The appellant does not oppose this request for review and the judgment is so modified.

### *New Trial in Interest of Justice.*

The appellant also argues that this court should exercise its authority pursuant to sec. 251.09, Stats., and grant a new trial in the interest of justice.

It is well settled that this court will not exercise its discretion to order a new trial in the interest of justice unless it has been convinced that there has been a probable miscarriage of justice, viewing the case as a whole. *Willenkamp v. Keeshin Transport System, Inc.* (1964),

you find he has suffered to date and is reasonably certain to suffer in the future as a natural consequence of the injuries he has sustained."

23 Wis. 2d 523, 531, 127 N. W. 2d 804. Our review of the record in this case does not convince us that there has been a probable miscarriage of justice.

There was a sharp conflict in the testimony and the resolution of the factual issues was for the jury.

*By the Court.*—Judgment modified and, as modified, affirmed.