McCluskey, Respondent, v. Steinhorst and another, Appellants.

No. 14. *Argued November 25, 1969.—Decided January 9, 1970.*
(Also reported in 173 N. W. 2d 148.)

For the appellants there was a brief by *Roberts, Boardman, Suhr & Curry,* and oral argument by *Bradway A. Liddle,* all of Madison.

For the respondent there was a brief by *Conway & Conway* of Baraboo, and oral argument by *David L. Walther* of Milwaukee.

CONNOR T. HANSEN, J. On the night of July 7–8, 1963, defendants (both of whom were Sauk county deputy sheriffs), received a request to go to the Reedsburg hospital to investigate a report that a man had been injured. When they arrived at the hospital they found Mr. Clifford Fry in the outpatient emergency room being treated for cuts over his left eye. Fry told the defendants he had taken the plaintiff to his parents' home and when they arrived plaintiff had struck him with a board, which was the reason he was at the hospital.

The defendants, after hearing Fry's story, radioed the Reedsburg police, were informed of the location of the McCluskey farm and also learned the plaintiff would probably return to Kenosha the next day (Monday) where he was employed. The defendants arrived at the McCluskey farm about 1 a. m. and there is considerable conflict in testimony as to what then transpired.

Defendants testified they knocked on the door of the house and plaintiff's mother let them in. They observed plaintiff lying on the daybed in the dining room wearing trousers but no shoes and he appeared to be asleep. Defendants called the plaintiff by name and attempted to arouse him and finally did so by pinching his nostrils with thumb and forefinger. Defendants then inquired about the incident with Fry to which plaintiff responded with obscenities. Defendants testified they told plaintiff he was under arrest for disorderly conduct and they were

taking him to jail, at which point plaintiff sprang off the bed swinging his fists. Plaintiff continued to struggle and one of the defendants struck him "for my own protection and . . . to subdue him so that the arrest could be made." Defendants testified they then handcuffed the plaintiff and took him to the Baraboo jail.

Plaintiff's mother was deceased at the time of trial and evidence in support of plaintiff's cause of action is based primarily on his testimony and that of his father, Mr. Lawrence McCluskey (hereinafter referred to as Lawrence). Lawrence testified that on the night of the incident he was sleeping when he heard the defendants in the dining room. He came out of his bedroom, which was on the same floor as the dining room, and saw defendants handcuff the plaintiff and then slap him hard, but he didn't wake up. Defendants then hit plaintiff and "pounded" him on the head and face with a flashlight three times as he lay on the daybed. Lawrence testified the plaintiff either rolled or was pulled off the bed onto the floor, where the defendants kicked him and then dragged him to the patrol car. The blows to the face broke plaintiff's nose and there was a large amount of blood on the floor and the daybed; pictures admitted as evidence substantiate this fact. Lawrence asked defendants to take plaintiff to a hospital but they refused, stating they were going to take him to jail.

Plaintiff testified he woke up on the floor and was being kicked by defendants. Plaintiff asked them to stop and then to his mother stated, " 'Help' . . . 'They're going to kill me.' " Plaintiff testified he was then dragged to defendants' patrol car and taken to jail. The following afternoon he was released from jail and taken to a hospital where he stayed from July 8th until July 15th. There was testimony by two doctors concerning the injuries which plaintiff received; however, there is no issue on appeal as to the amount of damages.

Defendants argue the evidence as found in the record is not sufficient to support a jury finding of excessive force. Plaintiff conceded the arrest for disorderly conduct was lawful. Therefore, defendants were privileged to use whatever force was reasonably necessary to make the arrest. *Schulze v. Kleeber* (1960), 10 Wis. 2d 540, 103 N. W. 2d 560.

"What amounts to reasonable force on the part of an officer making an arrest usually depends on the facts in the particular case, and hence the question is for the jury. The reasonableness of the force used must be judged in the light of the circumstances as they appeared to the officer at the time he acted, and the measure is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances." 5 Am. Jur. 2d, *Arrest,* p. 768, sec. 81.

In this case, the jury found the defendants did use excessive force; therefore, the issue on appeal is whether there is any credible evidence to sustain their finding.

"The well-accepted rule governing this court's review in a case like this is that the verdict of the jury must be sustained if there is any credible evidence which, under any reasonable view, supports that verdict. This is especially true when, as here, the jury's verdict has been approved by the trial court. The question is not whether there is credible evidence in the record to sustain a finding the jury did not make, but whether there is any credible evidence to sustain the finding the jury did make." *Altiere v. Bremer* (1968), 39 Wis. 2d 548, 549, 550, 159 N. W. 2d 664.

Defendants argue the evidence is insufficient for a number of reasons. First they claim it is incredible that they would attempt an arrest and do intentional harm to a man they had never seen before. Secondly, defendants point out the conflict in testimony between the plaintiff and other witnesses, including the testimony of

disinterested witnesses who were present when plaintiff was in a fight during the afternoon of July 7th. Defendants also direct our attention to inconsistencies between plaintiff's testimony at trial and that taken during an adverse examination. Finally, defendants suggest this court discount the testimony of Lawrence because he "was generally confused as to what transpired," and since the jury did not find any malice they must have disregarded all of the testimony of Lawrence.

At the time of the trial, Lawrence was sixty-eight years old and had difficulty hearing. A review of the record shows that much of the confusion in his testimony stems from that fact. While some of his answers were not responsive, it cannot be said his testimony was of no probative value. Also, a finding of no malice by the jury does not automatically demand the conclusion that *all* of Lawrence's testimony was discounted by them. What defendants have succeeded in raising by their arguments is an issue of credibility of witnesses which remained a jury determination.

"The weight of the testimony and the credibility of the witnesses are a matter for the trier of fact and are not to be disturbed if more than one reasonable inference can be drawn from the credible evidence. *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 138 N. W. 2d 238." *Babler v. Roelli* (1968), 39 Wis. 2d 566, 575, 159 N. W. 2d 694.

We conclude there is sufficient credible evidence to support the verdict of the jury and its finding should not be disturbed.

### *Intent.*

Defendants suggest the trial court erred in refusing to instruct the jury that an intent to harm or injure is necessary to a finding of use of excessive force in making an arrest. The instruction given by the trial court on this issue is as follows:

"This question simply inquires whether the defendants, who are deputy sheriffs and therefore peace officers, in making the arrest of the plaintiff used force and violence in excess of that reasonably necessary. A peace officer, in making an arrest, is justified in using such force as may be reasonably necessary to secure and detain the person arrested to overcome his resistance, if any, to arrest, prevent his escape, and protect himself from bodily harm. The peace officer is not justified in using unnecessary force or treating the person arrested with unnecessary violence or wantonly or maliciously abusing the person arrested. However, the officer is not required to determine at his peril the precise amount of force necessary but is to be governed in determining the amount of force to be used by what an ordinary prudent and reasonably intelligent person would deem necessary were he in the situation of the arresting officer having the knowledge that the officer possessed and guided by the reasonable appearance and the nature of the case and all of the surrounding facts known to the officer."

Defendants requested instructions, which were based on the last three paragraphs of Wisconsin Jury Instruction, Civil, Part II, 2005, read in part:

"However, an officer may not use excessive force in overcoming resistance to an arrest. Excessive force means force not reasonably or necessarily required by the circumstances and is the unlawful and willful use of violence. The acts committed by the officers must have been committed with an intention to inflict injury or harm. An intention to inflict injury or harm to the person is of the essence, and without such intention, the officers did not use excessive force. One who by carelessness or negligence, but without intent to injure another causes such other bodily harm is not guilty of using excessive force.
"You must remember that the elements of excessive force are these: an unlawful and willful use of force and violence upon another, and the intention that, by the use of such force or violence, bodily harm will be done to the person being arrested. (Wis J I—Civil, Part II, 2005)."

Defendants contend that an intent to inflict harm or injury is an essential element of assault and battery and cite the following cases: *Brabazon v. Joannes Brothers Co.* (1939), 231 Wis. 426, 436, 286 N. W. 21; *Donner v. Graap* (1908), 134 Wis. 523, 527, 115 N. W. 125; *Raefeldt v. Koenig* (1913), 152 Wis. 459, 462, 140 N. W. 56; *Degenhardt v. Heller* (1896), 93 Wis. 662, 664, 68 N. W. 411; *Krudwig v. Koepke* (1936), 223 Wis. 244, 247, 270 N. W. 79. These cases, as well as the standard jury instruction [1] intermingle the terms "assault" and "battery." There is no question that in Wisconsin, one of the elements of an assault is the present intent to cause harm. *Degenhardt v. Heller, supra.*[2] However, where an assault is carried out to completion and a battery committed, a plaintiff is not required to prove a hostile intent or desire to do harm. If a defendant acts intending to cause contact and the contact is unpermitted, or as in this case, found by the jury to be excessive, it follows that the intent is also unlawful. This was clearly set forth in *Vosburg v. Putney* (1891), 80 Wis. 523, 50 N. W. 403. In that case the plaintiff, who was fourteen, brought an action against a twelve year old who kicked the plaintiff in a schoolroom during school hours. Under these circumstances, the act was unlawful and therefore the intent was also unlawful.

"The jury having found that the defendant, in touching the plaintiff with his foot, did not intend to do him any harm, counsel for defendant maintain that the plaintiff has no cause of action, and that defendant's motion for judgment on the special verdict should have been granted. In support of this proposition counsel quote from 2 Greenl. Ev. sec. 83, the rule that 'the intention to do harm is of the essence of an assault.' Such is the

---

[1] Wis J I—Civil, Part II, 2005.

[2] *See*, however, 1 Restatement, *Torts* 2d, p. 49, sec. 32, which states that putting someone in apprehension of such contact is sufficient intent on which to base liability.

rule, no doubt, in actions or prosecutions for mere assaults. But this is an action to recover damages for an alleged assault and battery. In such case the rule is correctly stated, in many of the authorities cited by counsel, that plaintiff must show either that the intention was unlawful, or that the defendant is in fault. If the intended act is unlawful, the intention to commit it must necessarily be unlawful. Hence, as applied to this case, if the kicking of the plaintiff by the defendant was an unlawful act, the intention of defendant to kick him was also unlawful." *Vosburg v. Putney, supra,* 527.

In this case it was not necessary to instruct the jury on intention to inflict harm or injury as an element of battery. Such instructions would have only confused the jury and added an element inherent in the commission of the act itself. In this regard, the definition of intent in the 1 Restatement, *Torts* 2d, p. 15, sec. 8A, and the comments to that section are helpful:

"Sec. 8A.  **Intent**

"The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes the consequences are substantially certain to result from it. . . .

"**Comment:**

" . . .

"*b*.  All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. . . ."

It may well be defendants did not desire the consequences which resulted from their efforts to arrest the plaintiff. However, it cannot be claimed they did not know what consequences were certain or substantially certain to follow from action they took in removing plaintiff from

his father's house. There was, therefore, no error in refusing to give the instructions requested by defendants.

## *Instructions.*

After retiring to deliberate, the jury requested additional instructions on whether defendants could rightfully make an arrest after having provoked plaintiff. The court instructed the jury that there was no issue or claim that the arrest was not valid. However, defendants requested the jury also be instructed that there was no issue of provocation in the case. The trial court refused, and defendants argue this constituted error.

Provocation in this case goes to the validity of the arrest and since plaintiff conceded the arrest was valid, there was no issue of provocation. In addition, on appeal defendants conceded the inquiry of the jury was effectively answered by the trial court. There was, therefore, no error committed by failing to further instruct the jury on provocation.

## *Self-defense.*

Defendants claim the jury was precluded from considering the privilege of self-defense and argue the trial court should have submitted a question and instructed the jury specifically on that privilege. The trial court did give instructions on the privilege of arrest:

"This question [number one] simply inquires whether the defendants, who are deputy sheriffs and therefore peace officers, in making the arrest of the plaintiff used force and violence in excess of that reasonably necessary. A peace officer, in making an arrest, is justified in using such force as may be reasonably necessary to secure and detain the person arrested, to overcome his resistance, if any, to arrest, prevent his escape, *and protect himself from bodily harm. . . .*" (Emphasis added.)

The privilege of arrest includes the element of self-defense, thus it was included in instructions and verdict questions submitted to the jury. Any additional instructions on self-defense would have been redundant. There is no reason for this court to interfere with the discretion of the trial judge in his choice of verdict and instructions in this case. *Garcia v. Chicago & N. W. Ry.* (1950), 256 Wis. 633, 42 N. W. 2d 288.

### New trial in interest of justice.

Defendants also urge this court to order a new trial in the interest of justice under sec. 251.09, Stats.

"It is well settled that this court will not exercise its discretion to order a new trial in the interest of justice unless it has been convinced that there has been a probable miscarriage of justice, viewing the case as a whole. *Willenkamp v. Keeshin Transport System, Inc.* (1964), 23 Wis. 2d 523, 531, 127 N. W. 2d 804." *Michels v. Green Giant Co.* (1969), 41 Wis. 2d 427, 434, 435, 164 N. W. 2d 217.

A review of the record does not convince us that there has been a probable miscarriage of justice in this case.

*By the Court.*—Judgment affirmed.