LONGVILLE, Respondent, v. LEUSMAN and another, Appellants.

*No. 192. Argued September 14, 1970.—Decided October 6, 1970.*
(Also reported in 179 N. W. 2d 823.)

254

For the appellants there was a brief by *Anderson, Davis, Witkin & Fredrickson* of Superior, and oral argument by *Harold Witkin.*

For the respondent there was a brief by *Borg, McGill & Moodie* of Superior, and oral argument by *Douglas S. Moodie.*

HEFFERNAN, J. The trial judge's determination that the jury erred in finding the plaintiff negligent presents a close and difficult problem, for we have frequently and uniformly concluded that it is improper for a trial judge to upset a jury verdict if there is credible evidence to support that verdict. Only if the record is devoid of evidence that would sustain the verdict or if the evidence relied upon is incredible is it within the prerogative of the trial court to substitute his view of the evidence for that of the jury. The trial court was of the opinion that there was no credible evidence under any reasonable view which supported the jury's findings. *Barber v. Oshkosh* (1967), 35 Wis. 2d 751, 754; 151 N. W. 2d 739; *Michels v. Green Giant Co.* (1969), 41 Wis. 2d 427, 164 N. W. 2d 217.

We believe that the trial judge correctly analyzed the evidence and properly concluded that the only evidence that could even arguably have been used as a basis for finding the plaintiff negligent was incredible. The defendant's basic argument herein is simply that there is a sharp conflict in the testimony in regard to the facts just preceding the accident and, therefore, the jury's action should be sustained. This is, of course, a correct statement of the law and is the standard to be

applied if the testimony is in fact conflicting and the conflicting evidence is credible.

The trial judge correctly pointed out that the only conceivable testimony upon which the negligence of the plaintiff could be predicated was the defendant's statement to the general effect that the plaintiff pulled to the side of the road as far as he could go and then after coming to a stop started up again, veered his car to the left, and made contact with the rear of the trailer which was passing, but in a position not over the center line. The trial judge pointed out that the probabilities of this happening in the manner described by the defendant were extremely small. There was expert testimony that centrifugal force would have impelled the trailer to swerve to the left toward the plaintiff, and there was the positive testimony of the plaintiff that, after the passage of the towing truck, the trailer did in fact swing into the plaintiff's lane and cause the collision. The trial judge also pointed out that the point of impact on the station wagon to the rear of the extreme left front corner of the wagon militated against the defendant's version of the accident. He points out that, were the trailer on its own side of the road proceeding straight ahead or swinging to the right as the defendant testified and were the plaintiff at the time of the impact moving his car to the left and toward the center of the road, the impact would have occurred at the very left front corner of the wagon. From this the trial judge concludes that the physical facts render the defendant's version of the accident incredible as a matter of law and the accident impossible under the circumstances. He reasoned that the collision had to be occasioned by the invasion of the plaintiff's lane by the free swinging rear of the trailer.

We need not conclude, however, that the judge was correct when he said that the defendant's version of the accident presents an impossible set of circumstances, for, more importantly, it is clear that the defendant was not

in a position where he could see whether or not the plaintiff had in fact started up following the admitted stopping of his vehicle in his own lane on the extreme right side of the road.

The testimony of the defendant himself acknowledged that he did not know the positions of the station wagon and the trailer at the time of the impact. He was asked, "So you did not have a personal knowledge of the situation at the time of the impact?" He answered, "No." Moreover, we cannot glean from the record any positive statement by the defendant that the plaintiff, having once come to a stop, again started his vehicle prior to the time of impact. On the other hand, there is the positive statement of the plaintiff that he came to a complete stop and remained there after the impact, that the edge of the trailer swung into his lane, leaving tire marks beyond the center of the road, struck the side of his vehicle, causing damage from just behind the headlight to the doorpost, and again scraped the after-portion of the station wagon. The plaintiff testified that it was only after this impact that he moved the wagon to get it out of the soft sandy soil and away from the very edge of the road.

It is clear that, if the plaintiff started up after his original stopping, this was after the truck had already passed him. It would have been impossible for the driver of the truck to have seen this alleged resumption of forward motion unless the observation were made in a rearview mirror, and no such contention is asserted. Moreover, it is undisputed that the defendant was driving the vehicle, applying the foot brakes, and applying a hand brake. He was, as he admitted, "preoccupied." We cannot spell out any basis whatsoever from his testimony that the plaintiff stopped his vehicle, started it up, and headed it toward the rear of the defendant's trailer prior to impact.

We agree with the trial judge's observation that the "defendant Leusman's testimony . . . is just as favorable to the plaintiff as the plaintiff's own, if not more so." We are satisfied that the trial judge properly analyzed the facts and properly applied the law applicable to the trial judge's responsibility in respect to the apportionment of negligence.

"The general rule is that a jury's findings as to negligence apportionment will be sustained if there is any credible evidence that, under any reasonable view, supports such findings." *Barber v. Oshkosh, supra,* page 754.

The record amply demonstrates that the evidence relied upon by the appellant does not support the jury's view and, to the extent that it is arguably probative of the plaintiff's negligence, it must as a matter of law be considered incredible.

The trial judge properly changed the negligence answers by attributing 100 percent of the negligence to the defendant.

It is also claimed that the trial judge abused his discretion by refusing to allow in evidence a letter written by an Eau Claire attorney on August 5th, the day after the accident, making a demand upon the defendant for the payment of property damage only. The plaintiff testified at trial that he first noticed a pain in his arm, later attributed to a disc injury sustained in the accident, on the evening of August 4th. The letter was offered for the purpose of impeaching the plaintiff's testimony and in fact a portion of the defendant's theory of the case was that there had been a subsequent accident and that the plaintiff sustained an injury to his disc in that accident and not in this one. The argument is made that the letter would have been relevant and probative, for, had the personal injury been sustained on August 4th, a letter written the following day would not have omitted reference to the physical injuries. An offer of proof was made in chambers, and it is contended that the exclusion

of this letter was prejudicial error. At the time of motions after verdict, Judge KINNEY in his opinion pointed out that the letter had no probative value and that it was not worth the time involved in putting it into evidence and the probable time that would be consumed by the plaintiff's rebuttal of it.

We conclude that the trial judge properly exercised his discretion in excluding the letter. In *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, this court adopted Rule 303 of the American Law Institute Model Code of Evidence. The rule states in part:

"Rule 303. DISCRETION OF JUDGE TO EXCLUDE ADMISSIBLE EVIDENCE.

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

"(a) necessitate undue consumption of time . . . ."

We have frequently said that for the discretionary act of a judge to be upheld by this court there must be evidence that discretion was in fact exercised and that the ruling did not result from an error of law. It is clear that the rationale used by the trial judge falls explicitly within the limits of discretion imposed by the Model Code of Evidence, *Whitty v. State, supra,* and *State v. Hutnik* (1968), 39 Wis. 2d 754, 159 N. W. 2d 733. A trial judge may in his discretion exclude admissible evidence having some probative value if he concludes that its introduction, bearing in mind the time at which it is offered and other factors, will result in the delay of trial and will impede the judicial process. While the trial judge, we believe, erred in stating that the letter had no probative value, we nevertheless conclude that his appraisal that its introduction would unduly impede the progress of the trial is sufficient grounds upon which to sustain his exercise of discretion. The trial judge carefully pointed out why he questioned the letter's probative value. The considerations discussed in his memorandum opinion clearly

indicate that a statement that it had no probative value was merely a shorthand way of saying that the probative value was minimal in comparison to the undue time that will be consumed in dealing with the bit of evidence were it admitted. The letter was properly excluded from evidence.

We also conclude that the trial judge properly declined to set aside the jury's verdict as excessive. We have stated that:

> "It is not within our power . . . to set aside a verdict as excessive unless it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or rules of law." *Kink v. Combs* (1965), 28 Wis. 2d 65, 78, 135 N. W. 2d 789.

We have also repeatedly emphasized the importance of the trial judge's appraisal of the evidence in determining whether the damage award is excessive. Where the trial judge reviews the evidence and determines that it supports the jury's award, we will not examine the evidence *ab initio*. Our examination of the question in a case such as this, where the trial judge has reviewed the evidence, is limited to whether the trial judge's decision was a result of an abuse of discretion. *Ostreng v. Lowrey* (1968), 37 Wis. 2d 556, 155 N. W. 2d 558; *Page v. American Family Mut. Ins. Co.* (1969), 42 Wis. 2d 671, 168 N. W. 2d 65. The trial judge properly examined the evidence from the point of view most favorable to the verdict. *Page v. American Family Mut. Ins. Co., supra,* page 681. He pointed out in his opinion that the plaintiff had sustained considerable pain from the date of the accident on August 4, 1966, until the time of trial in April, 1969, that he underwent an extremely painful course of treatment and surgery during that time, that there was medical testimony that he would continue to have pain and disability for the remainder of his life, that this present disability was medically assessed at 20 to 25 percent, and even if, as the testimony showed, fur-

ther surgery would be successfully accomplished, the disability would even thereafter continue in the amount of approximately 15 percent. The trial judge took into consideration that the plaintiff was a professional golfer and that the disability would result in a substantial limitation in his occupational activity.

After reviewing these facts, all clearly supported by the evidence, the trial judge concluded that the sum of $12,500 was not excessive. We are satisfied that the trial judge, in accordance with the cases cited above, properly analyzed the evidence according to accepted standards and that his order sustaining the award did not constitute an abuse of discretion.

The defendant on this appeal has also asked that the *Powers* rule, *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393, be utilized by this court to set aside the verdict and to give the plaintiff the option of accepting a reduced verdict in the amount of $7,500 or of having a new trial. We conclude, however, that the propriety of the jury's award is so clear and so well within the limits supported by the evidence that the invocation of the power of the supreme court in this respect would be inappropriate.

The defendant has also asked for a reversal in the interest of justice under the discretionary powers of this court as set forth in sec. 251.09, Stats. Such power, however, is exercised sparingly and with great caution. *Kablitz v. Hoeft* (1964), 25 Wis. 2d 518, 131 N. W. 2d 346. The power will not be exercised unless this court is convinced, viewing the record as a whole, that there has been a miscarriage of justice. There is nothing in this record that leads to that conclusion.

*By the Court.*—Judgment affirmed.