Edmund Gordon CLARK et al., and Edward Travis et al., Plaintiffs,

v.

Joseph ZIEDONIS, Defendant.

No. 71–C–578.

United States District Court,
E. D. Wisconsin.

Oct. 29, 1973.

Gary A. Gerlach, Milwaukee, Wis., for plaintiffs.

James B. Brennan, City Atty. of Milwaukee by Rudolph T. Randa, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The defendant, Joseph Ziedonis, is a police officer who shot two fleeing youths suspected of committing a felony. His victims claim that excessive force was used in connection with the arrest and seek damages under the Civil Rights Act, 42 U.S.C. § 1983. The liability issue turns upon the question of justification for his use of deadly force.

At the close of the bench trial in this matter, I made the following preliminary determinations: a) the defendant had reason to believe that a felony was in progress; b) the plaintiffs' accounts of the incident lack credibility; and c) the defendant's version of the pertinent events represents the factual backdrop against which the liability issue must be considered.

In McCluskey v. Steinhorst, 45 Wis.2d 350, 354, 173 N.W.2d 148 (1970), the Wisconsin supreme court observed that the test for liability is whether the amount of force used by the arresting officer was reasonable under the existing circumstances. Applying this test to the facts of this particular case, I conclude that the defendant's use of deadly force was unreasonable and unjustified.

At approximately 10:00 P.M. on January 11, 1971, Mr. Ziedonis and his partner responded to a radio dispatch indicating an "entry in progress, three negro males on the scene. . . ." Armed with a Remington 12-gauge shotgun, Mr. Ziedonis positioned himself at the scene on a lighted public sidewalk, while his partner circled around to the rear of the homes located on that block. The defendant was within five to ten yards from them when he observed three black males emerge from the gangway located between two houses. Each one was of junior high school age and approximately five feet six inches tall. The plaintiff, Edward Travis, wielding a thin, 12-inch steel-blue file, faced Mr. Ziedonis for an instant after he ordered them to halt. All three then retreated into the gangway located at the next house down, as the defendant fired his shotgun over their heads. Mr. Ziedonis then ran up the sidewalk, parallel to their path of retreat, and positioned himself directly in front of that gangway. He observed Edward Travis facing him again, and fired a second shot,

which felled both Edward Travis and the second of the plaintiffs, Edmund Clark.

The defendant contends that when Edward Travis first faced him, wielding the file, he viewed the move as a confrontation by someone holding a long-barreled revolver, and that he feared for his life. However, notwithstanding the facts that the area was lighted, the distance between them was short, and the file does not resemble a gun, one point is noteworthy: Mr. Ziedonis deliberately fired over the head of his would-be assailant at that time.

Following that warning shot, the three suspects retreated to the gangway located at the next house. Mr. Ziedonis had reason to know that his partner, who was covering the rear yard, had heard his warning shot and that the suspects were not likely to escape. Moreover, Mr. Ziedonis positioned himself directly in front of the gangway containing the three suspects, including the "armed" one. While so exposed, he shot directly at them when he saw Edward Travis "facing" him again. The plaintiff Clark was hit in the back, and the plaintiff Travis, the object-wielder who "faced" the defendant each time, was hit through the head, from right to left, as well as in the forearm.

■■ Before force which is likely to cause death or great bodily harm can be used, one must reasonably believe that it is necessary to prevent imminent death or great bodily harm. Thomas v. State, 53 Wis.2d 483, 192 N.W.2d 864 (1972). While the defendant's testimony as to his frightened state of mind stands unchallenged by any of the testimony of the plaintiffs, I conclude that the defendant's second shot, which was aimed directly at the suspects, was clearly unreasonable and unjustified. The lighted conditions, the proximity of the actors, the physical appearance of the file, the nature of the wounds, the defendant's "warning" shot during a "confronta-

tion" which he says caused him to fear for his life, the suspects' retreat, and the defendant's awareness both of his partner's presence at the suspects' only available avenue of escape, and of his partner's knowledge of the warning shot, represent the circumstances which persuade me that the defendant used excessive force in effecting the arrest.

■ Flight on the part of one suspected of crime does not, of itself, warrant the use of deadly force by an arresting officer. Mr. Ziedonis' testimony, however, suggests that he believed that mere flight by one suspected of burglary justified the use of his shotgun. It is only in certain aggravated circumstances that a police officer may shoot the person he is attempting to arrest. See Sauls v. Hutto, 304 F.Supp. 124 (D.C.La.1969); Jackson v. Martin, 261 F.Supp. 902 (D.C.Miss.1966). This conclusion is bolstered by the language of § 939.49(1), Wis.Stats. (1971), which states in part:

" . . . It is not reasonable to intentionally use force intended or likely to cause death or great bodily harm for the sole purpose of defense of . . . property."

I conclude that this shooting constituted the use of unreasonable force under the circumstances. See McCluskey v. Steinhorst, 45 Wis.2d 350, 173 N.W.2d 148 (1970).

Therefore, it is ordered that judgment be and hereby is entered in favor of the plaintiff, Edward Travis, and against the defendant, for compensatory damages in the amount of $1,500; in favor of the plaintiff, Edmund Clark, and against the defendant, for compensatory damages in the amount of $5,000; in favor of the plaintiff, Buster Clark, and against the defendant, for special medical damages in the amount of $1767.31; and in favor of the plaintiff, Carrie Staples, and against the defendant, for special medical damages in the amount of $279.83.