Glenn W. JOHNSON, Plaintiff-Respondent,

v.

Donald RAY, Dennis Forss and Stanley Christiansen,
Defendants-Appellants-Petitioners.

Supreme Court

*No. 79–114. Argued November 24, 1980.—
Decided January 6, 1981.*

(Also reported in 299 N.W.2d 849.)

For the petitioners there was a brief by *C. M. Bye,
Stuart J. Krueger* and *Gaylord, Bye, Rodli & Krueger,
S.C.,* of River Falls, and oral argument by *Stuart J.
Krueger.*

For the respondent there was a brief by *Dane F.
Morey* and *Whelan, Morey, Ricci & Chambers, S.C.,* of
Durand, and oral argument by *Dane F. Morey.*

STEINMETZ, J. This case was tried to a jury, the Hon. John G. Bartholomew presiding, in Pierce County circuit court. The verdict of the jury found for the plaintiff as to liability, and cause, and damages were awarded. The court of appeals affirmed the verdict as to liability and cause, and reversed and ordered a new trial on damages. This decision was by two appellate judges with Foley, J. dissenting. Judge Foley would grant a new trial on all issues, not just the damage issue.

Plaintiff and defendants have petitioned this court for review. The plaintiff seeks affirmation of the trial court and the defendants seek a new trial on all issues.

The trial judge submitted three questions to the jury. They were:

"Question No. 1.: Did the Defendants, Stanley Christiansen, Donald Ray, and Dennis Forss, at and immediately prior to arresting and detaining the Plaintiff, Glenn W. Johnson, under all of the circumstances then present and existing, use more force than was reasonably necessary in the performance of their duties as reasonable and prudent law enforcement officers?

"Question No. 2.: Was such excessive force by said Defendants a cause of any injury sustained by the Plaintiff?

"Question No. 3.: What sum of money will fairly and reasonably compensate Glenn W. Johnson in each of the following respects:
"A.) Medical, hospital and drug expenses to date?
"B.) Loss of earnings to date?
"C.) Out-of-pocket payments to truck loaders and unloaders?
"D.) Pain, suffering and disability to date?
"E.) Loss of earning capacity in the future?"

Counsel for the defendants objected to the form of the damage question submitted and the use of civil instruction 1700 in the form used by the court.[1]

---

[1] That part of the judge's instructions being challenged reads as follows:

The trial judge reasoned that if the jury found the use of excessive force and found it to be the cause of damages that therefore all damages found in answers to subdivisions of question 3 would be awarded to plaintiff.

This objection to the verdict and instructions gives rise to the major issue in this case which is: On a finding of the use of excessive force by the police and that such force caused injury, is the plaintiff limited in recovery of damages sustained by the application of such excessive force?

This court rules "yes" as did the court of appeals. The trial court in the damage question form and instruction did not clearly so inform the jury. Contrary to the decision of the court of appeals, this court rules there must be a new trial on all issues in the interest of justice.

Due to facts and circumstances of this case as evidenced during the trial, no subsequent jury could assess the damages caused only by the excessive force as found by a previous jury. The liability, cause and damages issues in this case are all essential, like the links in a

"You must answer damage questions no matter how you may have answered any of the previous questions in the verdict. By asking you to determine the amount of damages, the Court is not indicating, nor is it asking you to indicate that the party whose damages are being determined, is entitled to them. In answering damage questions, you are instructed that nothing should be added by way of punishment or because of sympathy or resentment. In making your assessment of damages, you will be fair and just, and allow nothing of a prejudicial nature against any of the parties to affect your judgment. The amounts to be inserted by you in answer to each damage question is for you to determine from the evidence. What Counsel asks for in their arguments is no criteria of measurement of damages. The opinions or conclusions of Counsel as to damages which should be awarded should not influence you unless it is sustained by the evidence. Therefore, you should examine the evidence carefully and dispassionately and determine your answers from the evidence in this case."

chain; remove one link and the chain loses vitality and integrity.

## FACTS

The plaintiff Glenn Johnson admittedly was late for work and speeding on November 4, 1972, as he proceeded from Plum City to Ellsworth, Wisconsin, at about 3 a.m. His speed at times before he was stopped at the outskirts of Prescott was 75 to 85 miles per hour, by his testimony.

As he went through the 25 mile per hour zone in Ellsworth at 45 miles per hour, he was observed by police officers Ray and Forss. The officers began to pursue Johnson, although they did not turn on their official lights or siren. They did have the squad car headlights on. They were unable to catch up with Johnson although traveling at a speed of over 100 miles per hour. They radioed alert to the city of Prescott to request assistance. Responding to the call, Christiansen, a police officer for that city, set up a running roadblock at the city limits of Prescott.

As Johnson approached, Christiansen pulled his squad car out in front of Johnson's car. Christiansen's official car lights were flashing. To avoid colliding with the running roadblock, Johnson was forced to pull over to the side of the road. There is considerable conflict in the testimony as to what then transpired.

The officers contend that Johnson exited his car and began using loud and abusive language. They asked to see Johnson's driver's license, and he showed it to them but would not physically hand it over to them. The officers contend that when Ray shined his flashlight into the backseat of Johnson's car, Johnson swung his arm knocking the flashlight to the ground and hitting Ray in the stomach all in one motion. At that point, the offi-

cers attempted to handcuff Johnson, who resisted by holding his hands in front of his body, clasping his license, and refusing to allow his arms to be brought behind his body. After a struggle in which one officer grabbed Johnson's head and forced it downwards, he was handcuffed and no further resistance was offered. The officer testified he forced Johnson's head downwards since Johnson was directing his head towards officer Ray's face in a very direct and forceful manner. Johnson was issued two speeding citations and was then released.

Johnson claims that the first police car he saw that morning was the vehicle that suddenly pulled out in front of him outside of Prescott. He claims he gave his license to the officers when they asked for it. He denied knocking a flashlight out of any officer's hand or striking any of them. Johnson admits he passively resisted being handcuffed and claims that an officer struck the back of his neck forcefully three times until he allowed himself to be handcuffed.

Johnson brought suit against the officers for assault and battery. He claimed that the beating produced neck and back injuries as well as anxiety and depression. A jury found that the officers used excessive force in arresting Johnson and awarded him approximately $116,-000. The trial court denied the officers' post-trial motions for a change in the verdict answers or for a new trial and entered judgment on the jury verdict.

There was no claim that the officers were acting outside their authority or that the arrest itself was illegal. Therefore, the officers were privileged to use whatever force was reasonably necessary to make the arrest. *McCluskey v. Steinhorst,* 45 Wis.2d 350, 173 N.W.2d 148 (1970).

In *Wirsing v. Krzeminski,* 61 Wis.2d 513, 213 N.W.2d 37 (1973), this court adopted the principle applicable to

police officers making arrests as found in Restatement, *Torts* 2d, p. 193, sec. 118:

" 'The use of force against another for the purpose of effecting his arrest . . . [is] privileged if all the conditions stated in secs. 119–132 . . . exist.'

"The principal condition is stated in sec. 132, page 236, which points out that, although force is privileged to effect an arrest, it 'is not privileged if the means employed are in excess of those which the actor reasonably believes to be necessary.' Comment *a* to sec. 132 states that, although a police officer's privilege of self-defense is pertinent to this issue:

" '. . . if the actor is making or attempting to make an arrest for a criminal offense he is acting for the protection of the public interest and is permitted even a greater latitude than when he acts in self-defense, and he is not liable unless the means which he uses are clearly excessive.'

"These principles of the Restatement are consonant with leading cases heretofore decided by this court. *Bursack v. Davis* (1929), 199 Wis. 115, 225 N.W. 738; *Metzinger v. Perry* (1928), 197 Wis. 16, 221 N.W. 418; *Ogodziski v. Gara* (1921), 173 Wis. 371, 181 N.W. 227."

The principle is clear that one who has police authority to maintain the peace has a privilege to use force, and the question then becomes simply whether the force was excessive for the accomplishment of the purpose. The reasonableness of the force depends upon the facts of each case, and is a question to be resolved by the jury.

In *McCluskey v. Steinhorst*, 45 Wis.2d 350, 173 N.W. 2d 148 (1970), the court accepted the test for reasonable force as defined in 5 Am. Jur.2d, *Arrest*, sec. 81 (1962) as follows:

" 'What amounts to reasonable force on the part of an officer making an arrest usually depends on the facts in the particular case, and hence the question is for the jury. The reasonableness of the force used must be judged in the light of the circumstances as they appeared to the officer at the time he acted, and the measure is

generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances.' "

The burden upon the plaintiff is that which is commonly referred to as the middle burden of proof, midway between that required in ordinary actions (a preponderance of the evidence), and that required in criminal actions (beyond a reasonable doubt). The proof required to establish excessive force is by a clear and satisfactory preponderance of the evidence. *Wirsing v. Krzeminski*, 61 Wis.2d 513, 213 N.W.2d 37 (1973).

The trial judge in the instant case applied the rule in the *Wirsing* case, however, there were distinguishing factors in these cases. In the *Wirsing* case all injuries claimed clearly were caused by the officer's physical actions and the only issues were whether excessive force was used in effectuating the arrest and if found then, all damages were resultant.

In this case, however, the plaintiff claimed not only the neck strain which was traceable to excessive force if found by the jury, but in addition the plaintiff claimed anxiety and aggravation of a depression condition which was permanent in nature.

From the manner in which the verdict was submitted there is no way of knowing whether the same award would have been made if the jury had been instructed that they were to allow only damages caused by the excessive force they found in answering the liability and cause questions.[2]

---

[2] Restatement, *Torts* 2d, p. 259, sec. 144 states:

*"Effect of Excessive Force*

"If the actor applies a force to or imposes a confinement upon another which is in excess of that which is privileged,

"(a) the actor is liable for so much of the force or confinement as is excessive;

"(b) the other's criminal liability is not affected;

The plaintiff stated in his testimony about what followed when he was stopped by the moving roadblock: "Well, I didn't do anything for just a few seconds. I was so scared or just terrified that I couldn't hardly breathe or move even."

He also testified at the trial six years after the incident that his neck, back and arm bothered him on occasion and "Well, my nerves are bad. I don't know if I'll ever get over that."

Dr. Frank Springer who saw the plaintiff ten days after the incident testified his findings were:

"Says he feels like he's about 200 years old, sore, stiff neck from the neck to the dorsal lumbar level, can't drive a car. He's *emotionally* very disturbed to think that he was handled the way he was, doesn't know what he should do about it. . . . and is depressed." (Emphasis added.)

Dr. Springer also testified there was a causal relationship between the *confrontation* with the police on November 4, 1972, and the plaintiff's depression.[3]

"(c) the other has the privilege stated in secs. 63–75 to defend himself against the actor's use or attempted use of excessive force or confinement.

*"Comment:* a. The use of excessive force or the imposition of excessive force or confinement does not make the actor liable for harm done by so much of the force or confinement as is not excessive. So too, the fact that the actor, having properly intervened in the exercise of the privilege stated in this Section has already imposed excessive force does not destroy the privilege from the beginning and, by relation back, make his original intervention unlawful. On the other hand, the actor is liable for so much of the force used as is in excess of the privilege. The fact that the actor by using excessive force becomes liable to another does not, of course, affect the criminal liability of the other. This is true even though the person who uses the excessive force is a peace officer."

[3] The Random House Dictionary of the English Language: *"Confront* . . . to face in hostility or defiance; oppose . . . *confrontation."*

The doctor also testified the plaintiff told him that:

"[H]e is extremely distraught and disturbed emotionally by this *accident*, and that last night about 10:00 P.M. he developed a sudden palpitation and pounding of his heart, a very rapid heart beat which persisted throughout most of the evening and morning hours. He hasn't been able to sleep well since the *accident*. He states that his whole body now aches, that he has been unable to work because of pain and nervous tension and anxiety, resultant reactive depression." (Emphasis added.)

That was recorded in hospital records on November 18, 1972, 14 days after the stop by the police.

Dr. Springer did not testify that the plaintiff's condition physical or emotional, was permanent.

Dr. Joseph Tobin, a psychiatrist, first saw the plaintiff on March 13, 1973, approximately five months after the arrest. The plaintiff was referred to Dr. Tobin by Dr. Springer.

Dr. Tobin diagnosed the plaintiff's condition as "depressive reaction." He then saw plaintiff 71 or 72 times, the last time being November 3, 1978, six years after the arrest and three days before the trial.

Dr. Tobin found, objectively, "stiffness" in plaintiff's neck. He could not answer what portion of plaintiff's "psychoneurotic illness" was due to stress and what portion was due to predisposition. When asked, Dr. Tobin could not testify that plaintiff was suffering from traumatic neurosis as a result of the November 4, 1972, incident with the police.

Later Dr. Tobin testified as follows: "My opinion is that the *incident* of November 4th was a contingent factor in the depressive reaction the patient has suffered." (Emphasis added.) He then testified the *altercation* with the police on November 4, 1972, was a cause of the depressive reaction.[4]

---

[4] The Random House Dictionary of the English Language: "*Altercation:* . . . a heated or angry dispute; noisy argument or controversy."

Dr. Tobin testified the plaintiff would require future treatment for the depression condition, but "I do not know how much exactly he will require." The essential form of treatment he rendered plaintiff up to the trial was psychopharmacologic, drug treatment.

Dr. Tobin testified the plaintiff's stay in the hospital in April, 1975, was for "neurosis depressive reaction, dissociative state, acute." The doctor raised the question at the time of hospitalization that the plaintiff's condition might have been due to plaintiff's use of prescribed drugs.

Dr. Tobin testified in regard to the plaintiff's inability to work as follows: "My opinion is that Mr. Johnson is totally and permanently disabled." It is not totally clear from the record, however, it appears that this opinion was based on the plaintiff's emotional, depressed condition and not his neck injury even though Dr. Tobin testified in his prognosis of plaintiff that he was influenced by "The nature of his personality organization, his response to his own perception of *the injury,* the duration of the illness and factors which I would have to label as unknown of biochemical origin." (Emphasis added.)

This record required that the trial judge instruct the jury that damages were to be allowed only for injuries caused by the use of excessive force by the police. The way the instructions and damage question were phrased it is impossible to tell what the jury found to be excessive force.

What was the exercise of reasonable force was for the jury to decide and they decided here that some part of the officers' actions was excessive and causal of injuries. The issue then was what injuries were caused by the use of excessive force: (1) physical injury to the neck, back and arm or (2) aggravation of a depressive condition or (3) both.

This court in *Schulz v. St. Mary's Hospital*, 81 Wis.2d 638, 260 N.W.2d 783 (1978), in citing *Chapnitsky v. Mc-Clone*, 20 Wis.2d 453, 463, 464, 122 N.W.2d 400 (1963), stated:

"While it is not recommended "in mine-run personal-injury actions that the jury be interrogated as to whether certain particular injuries of plaintiff were caused by the accident,' our court has held that where, as in the case before us, '. . . plaintiff's damages resulting from an accident would be minimal unless a particularly serious mental or physical condition was also caused by the accident in question, and there is sharp conflict in the testimony as to whether such serious condition was caused by the accident, then a question [inquiring as to an additional fact] . . . is proper and often advisable.' Such special fact questions have been termed 'useful tools.' While the form of a special verdict is a matter largely within the discretion of the trial court, we hold, under the circumstances of the case before us, the submission of the special verdict question requested by the defendant was not only advisable, but required, and it was an abuse of trial court discretion to refuse to do so."

The trial judge in this case must both instruct the jury that they may allow damages only causally related to the excessive force used if they find it present in the actions of the police officers and so phrase the verdict. It will be the jury's duty to determine when the excessive force commenced and what injuries its use caused. This is no more difficult than our requiring jurors to separate injuries sustained in different accidents and then allowing damages only for the accident being tried.

Also, in the next trial, both the plaintiff and expert witnesses will have to identify the causal relationship between the various actions of the officers and the physical injury and the mental and emotional condition of the plaintiff.

As this court stated in *Wirsing v. Krzeminski, supra,* at page 522, "The trial judge also properly instructed

the jury that, if under the circumstances no force at all would be required by a reasonable and prudent police officer, then any force would be excessive." The jury will determine when the actions became excessive force if it was of such nature.

It is apparent from the last cited material from the *Wirsing* case that another trial issue is resolved. The officers should be allowed to testify why under the circumstances they wanted to handcuff the defendant and why they exerted the efforts they did. They cannot testify as experts on the issue, but rather why they did it so the jury can consider whether it was the action "an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances." *(McCluskey v. Steinhorst, supra.)*

The trial court would not allow defendants' attorney to argue to the jury that the plaintiff did not sustain any *recoverable* damages regardless of what the plaintiff's medical evidence showed. On the re-trial of this case, if the facts are testified to in the same manner as in the first trial, then such argument would appear appropriate and consistent with the instructions given the jury.

First, in the expert witness instruction, (Wis JI—Civil, Part I, 260) the jury is told they need not accept the opinions of the doctors and may give whatever weight they believe the doctors' testimony is entitled to and no more.

Secondly, the argument is consistent with the principle that the plaintiff is entitled to be awarded compensation only for injuries and resulting damages he sustained due to excessive force, if it is found by the jury.

The attorneys, witnesses and judge in the first trial referred to the contact between the plaintiff and the officers as an "accident," "incident," "confrontation" and

"altercation." None of these terms are synonymous with "excessive force" and only the jury can determine whether they are informative or helpful in arriving at their determination of when "excessive force" was present, if at all, under all the circumstances.

*By the Court.*—The decision of the court of appeals is reversed in part, affirmed in part and the cause is remanded for a new trial consistent with this opinion.