Flozell **JONES, Individually and as Administrator of the Estate of Dennis Jones, Decedent,**

v.

Keith **MARSHALL, Officer, West Hartford Police Department.**

**Civ. No. 13811.**

United States District Court,
D. Connecticut.

Oct. 8, 1974.

Bruce C. Mayor, Hartford, Louis Parley, University of Connecticut School of Law Legal Clinic, West Hartford, Conn., for plaintiff.

James P. Connolly, Corp. Counsel, Town of West Hartford, W. Hartford, Robert Pelgrift, Hartford, Conn., for defendant.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

This is an action for damages for the death of Dennis Jones that has been brought by his father as administrator of his estate. The defendant, Officer Keith Marshall of the West Hartford Police Department, who shot and killed Jones, is alleged thereby to have deprived the decedent of his civil rights under color of state law.[1] 42 U.S.C. § 1983 (1970). Jurisdiction is proper under 28 U.S.C. § 1343(3) (1970). The parties have filed cross motions for summary judgment based upon the following basic facts to which they have stipulated.

### I. *Stipulated Facts*

On August 29, 1969, at approximately noon, Officer Marshall, while on patrol in his cruiser, observed a Cadillac being driven by three males, later identified as Russell Seals, Jr., Raymond Arter, and Dennis Jones. Through radio contact with the West Hartford Police Headquarters, Marshall learned that the automobile was a stolen vehicle and began to follow it. Marshall made no attempt to stop the car and did not activate his siren or flasher. The Police Headquarters radioed him that assistance from the Hartford Police Department was on the way.

The Cadillac and Marshall proceeded for some time into Hartford at a moderate pace. However, when the Cadillac entered Mark Twain Drive from Dillon Road it accelerated to about 80 miles per hour and proceeded, with Marshall in pursuit, onto Mark Twain Extension. At the end of the Extension, the Cadillac and the police cruiser skidded to a halt, creating a large cloud of dust.

Marshall alighted from his cruiser with his weapon drawn. Since the occupants of the Cadillac were not immediately visible, Marshall climbed to the top of a nearby embankment, and from that point he observed two males running across an open field. He called to them to halt. They did so momentarily and turned to face him; then they turned and began to run away from Marshall toward a nearby wooded area.

Without firing a warning shot or attempting any further means of apprehension, Marshall fired his gun at one of them, Dennis Jones. Although Marshall aimed at Jones' leg, the bullet struck the decedent in the left buttock and then penetrated the left ilium and lacerated the left common iliac artery, peritoneum, massentery, and jejunum, causing death. At the time, Marshall was 125 feet from Jones; the intervening distance can be characterized as rough terrain containing a gully and covered with bushes and underbrush.

Neither Jones nor the other individuals in the Cadillac was armed or specifically

1. The complaint originally named as defendants Marshall; the Town of West Hartford; William Rush, Chief of the West Hartford Police; and Richard Custer, West Hartford Town Manager. The causes of action against all but Keith Marshall were dismissed by order of this Court, Jones v. Marshall, Civ. No. 13,811 (D.Conn.1971), and a claim of negligence against Marshall was subsequently withdrawn by the plaintiff, leaving the § 1983 claim against Marshall as the sole cause of action.

**360**

threatened physical injury in any manner to Officer Marshall or anyone else. The automobile pursuit did not endanger anyone other than the occupants of the two cars.

Officer Marshall actually and reasonably believed that Jones was a felony suspect. Theft of a motor vehicle was defined by state law as a felony at the time these events occurred. Conn.Gen. Stat. § 53–57. Marshall actually and reasonably believed that it was necessary under the circumstances to use deadly force to apprehend and arrest Jones.

## II. *Civil Liability and the Constitutional Claim*

If this case had been brought as a wrongful death action in state court, there could have been no recovery: Marshall, on the stipulated facts, would have been privileged to shoot at Jones. In Martyn v. Donlin, 151 Conn. 402, 198 A.2d 700 (1964), a police officer (Donlin) chased and shot one whom he reasonably believed to be a felon (Martyn) when Martyn ignored the officer's order to stop and climbed over a fence. Finding that Donlin had a reasonable belief that the use of deadly force was necessary to effect the arrest, the court declined to hold him liable for Martyn's death. The case states the Connecticut common law principles:[2]

> "Under our rule, in effecting a legal arrest, the arresting officer may . . . use such force as he reasonably believes to be necessary, under all the circumstances surrounding its use, to accomplish that purpose, that is, to effect the arrest and prevent an escape. . . . But the use of a means, or of force, likely to cause death, as was the case here, is privileged only if the arrest was for a felony and the force used was reasonably believed to be necessary to effect that arrest. . . .
>
> " . . . .
>
> " . . . An officer in using deadly force for this purpose must act in good

faith. He must have actually believed, and also have had reasonable cause to believe, that it was necessary under the circumstances to use deadly force to make the arrest."[3]

These common law principles, if constitutional, are applicable here: in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), a suit under § 1983 for damages for false imprisonment, the Court emphasized that the section "should be read against the background of tort liability" and recognized the common law privilege of a police officer to make an arrest, in good faith and with probable cause, of one whose innocence is later proved. Similarly, this Court must allow Marshall to use the common law privilege enunciated by Martyn v. Donlin as a shield against liability unless that common law privilege itself be unconstitutional. *Cf.* Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970); Clark v. Ziedonis, 368 F.Supp. 544 (E.D.Wis. 1973); Love v. Davis, 353 F.Supp. 587 (W.D.La.1972).

The plaintiff does not challenge any of these principles as embodied in Connecticut's law other than that element which extends the privilege to use deadly force to an attempt to effect an arrest for an offense that did not pose the risk of death or serious bodily harm. As to this element, the plaintiff contends that the proposed limitations on the use of deadly force, as stated in the Model Penal Code, are constitutionally required. With regard to the instant case, the relevant subsections in that code provide:

> "(b) The use of deadly force is not justifiable under this Section unless:
>
> . . . .
>
> (iv) the actor believes that:
>
> (1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or
>
> (2) there is a substantial risk that the person to be arrested will cause

---

**2.** Although there are variations of this rule in some states, the *Martyn* formulation is representative of the common law rule.

**3.** 151 Conn. at 411–412, 198 A.2d at 705.

death or serious bodily harm if his apprehension is delayed." [4]

The basis for the plaintiff's contention lies in policy arguments that allowing the use of deadly force in circumstances such as those of this case is "illogical, antequated [sic] and barbaric." Reduced to its essence the argument is that allowing life to be taken to protect property is barbaric in our modern world, where only jail sentences and fines are prescribed as punishments for crimes against property. In arguing that "[t]he balance [between the value of a suspect's life and the threat he poses to society] against life that exists in the common law rule is reversed," the plaintiff relies upon language that appears in the opinions in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Furman provides no support for that proposition, however. The case cannot be explained as founded upon an overriding reverence for human life. Furman does not hold that imposition of the death penalty is unconstitutional. Rather, the key to Furman is only its insistence that in the imposition of the death penalty procedures which allow the wide discretion to triers heretofore employed are not permissible. Cf. Note, "Discretion and the Constitutionality of

the New Death Penalty Statutes," 87 Harv.L.Rev. 1690 (1974).

In his argument the plaintiff also relies upon Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), which sets up as a criterion for § 1983 actions which seek damages for personal injuries at the hands of state officials the "shock-the-conscience" test of Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The plaintiff's contention is that if that criterion is applied the Martyn rule falls on the wrong side of the line. However, language in Johnson itself proves that the plaintiff has misread its scope: "Certainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person . . . ." 481 F.2d at 1033. In the present case, of course, the plaintiff could not recover in tort at common law, for Marshall under the common law was privileged under the circumstances to fire at Jones.

 It is noteworthy that during the course of the recent codification and substantial revision of Connecticut's criminal laws, which effort used the Model Penal Code as a guide, the Martyn rule was retained and codified.[5] The

---

4. Model Penal Code § 3.07(2)(b)(iv) (proposed official draft 1962).

5. Conn.Gen.Stat. § 53a–22 provides, in pertinent part:

"Sec. 53a–22. Use of physical force in making arrest or preventing escape.

(a) For purposes of this section, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not in law constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render justifiable the use of physical force to make an arrest or to prevent an escape from custody. A peace officer who is effecting an arrest pursuant to a warrant is justified in using the physical force prescribed in subsections (b) and (c) unless such warrant is invalid and is known by such officer to be invalid.

(b) Except as provided in subsection (a), a peace officer is justified in using [reason-

able] physical force upon another person when and to the extent that he reasonably believes it necessary to: (1) Effect an arrest or to prevent the escape from custody of a person whom he reasonably believes to have committed an offense, unless he knows that the arrest or custody is unauthorized; or (2) defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

(c) A peace officer is justified in using deadly physical force upon another person for the purposes specified in subsection (b) only when he reasonably believes that such is necessary to: (1) Defend himself or a third person from the use or imminent use of deadly physical force; or (2) effect an arrest or to prevent the escape from custody of a person whom he reasonably believes has committed or attempted to commit a felony." (Emphasis in original.)

Court regards this legislative assessment of the balance between life and property values, occurring as it did after the events here in question took place, as strong evidence that the common law rule is not one which is generally regarded as so shocking to the conscience as to violate the Constitution. While there is no doubt that a contrary view exists and indeed has much to support it, it is not the prerogative of this Court to judge the constitutionality of state laws on policy grounds alone, as the plaintiff would essentially have it do. If the plaintiff believes the state law on the use of deadly force to effect an arrest to be unjust or overly harsh, it is to the legislature, and not the federal courts, that he must turn. The plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.

So ordered.