QUESTIONS: 1. Does the term "felon" as used in s. 776.05, F. S., refer only to a person who has actually been convicted of a felony? 2. If the answer to question 1 is in the negative, may the term be applied to anyone whom the arresting officer has reason to believe has committed a felony when the use of force is necessary to effect an arrest? 3. Is the phrase "fleeing from justice" applicable to a setting where a police officer, after having identified himself as such and ordered an individual reasonably believed to have committed a felony to halt, uses necessary force, including deadly force, in arresting such person? 4. Does s.776.05, F. S., make any distinction as to whether an individual whom the officer reasonably believes is a felon is armed or unarmed? 5. Does s. 776.05, F. S., make any distinction between a felony crime against property rather than against a person or persons?
SUMMARY: The term "felon" as used in s. 776.05, F. S., as amended, is a descriptive reference used by the Legislature in order to differentiate between categories of crimes, i.e., felonies as opposed to misdemeanors, and was not intended to be limited to persons actually convicted of a felony. If an officer has reasonable grounds to believe that a felony has been or is being committed, that the person to be arrested has committed or is committing it, and that the person to be arrested is fleeing from or escaping arrest, the officer is justified in using any force necessarily committed in retaking or arresting such person, provided that no more force is used than is reasonably necessary to apprehend the person to be arrested or to effectuate such arrest. Section 776.05, F. S., makes no distinction between armed and unarmed felons. Section 776.05, F. S., makes no distinction between felony crimes against property rather than against a person or persons. Before answering your specific questions, a review of the law which has been formulated regarding the use of deadly force by police officers when arresting felons or retaking fleeing felons is necessitated. The history of this legal issue over the past 50 years has been said to be characterized by "shifting sands and obscured pathways." Jones v. Marshall,528 F.2d 132, 141 (2nd Cir. 1975). It is an issue on which the courts and commentators throughout the country have long disagreed. See Prosser, Torts (4th ed.), s. 26, p. 134. Generally, two rules have been either adopted or urged for adoption regarding the scope of an officer's privilege to use a firearm. The first can be characterized as the "traditional rule" and finds its basis initially in the early common law. The second, for purposes of this discussion, will be referred to as the "modern rule" and finds its initial support in treatises such as the American Law Institute Restatement of Torts s. 131 (1934). At early common law, the rule was that a felon was an outlaw whose life could be taken in the process of effecting an arrest without regard to whether he could otherwise be detained. The rationale of this rule was that all felonies were punishable by death. See McDonald, Use of Force by Police to Effect Lawful Arrest, 9 Crim. L.Q. 435, 437; Moreland, Some Trends in the Law of Arrest, 39 Minn. L. Rev. 479. At common law, felonies included murder, rape, manslaughter, sodomy, mayhem, burglary, arson, and robbery. 1 Wharton Criminal Law s. 26. This privilege to use firearms was extended to all persons, whether law officer or private citizen. The common law rule was later refined to reflect a "last resort" factor, so that an officer was not entitled to take the life of a fleeing felon unless the arrest could not otherwise be effected. See Blackstone's Commentaries, bk. 4, Ch. XIV, at 827 (Gavit ed. 1941). Additionally, the concept of probable cause became a factor in American jurisprudence. Even under the common law rule, the officer must actually and reasonably believe that the individual has committed or is committing a felony. During the 20th century the common law principles set forth above became the subject of extensive comment and debate. A few American courts adopted the rule initially formulated in the First Restatement of Torts s. 131 (1934) that authorized the use of deadly force only for arrests for treason and felonies which normally cause or threaten death or serious bodily harm or which involve the breaking and entry of a dwelling place. This rule, however, was overturned by the institute in 1948. See Restatement of the Law, 1948 Supp., Torts s. 131 at 628 et seq. (1949). Presently the restatement permits the privilege only when the arrest is for treason or any felony which has been committed; when the officer reasonably believes the (felony) offense was committed by the person; and that the arrest cannot otherwise be effected. The 1934 Restatement was criticized by the author of the 1948 Supplement on the grounds that while the 1934 rule might be a "desirable rule," practically every case which has considered the question agrees that the original English Common Law is still the law. However, on this issue the restatement and the Model Penal Code, adopted by the institute in 1962, have parted company. The authors of the code have concluded that deadly force can be used to prevent the commission of a felony only when the felony involves substantial risk to life and limb. ALI Model Penal Code, s. 3.07(2)(b)(iv) (Proposed Official Draft, 1962). Accord: Recommendations of the Presidential Commission on Law Enforcement and the Administration of Justice, Task Force Report: The Police 189 (1967). By contrast, the latest restatement simply carries forward the common law rule readopted by the 1948 Supplement. See Second Restatement of Torts s. 131 (1965). While the proposed Federal Criminal Code recommends adoption of the modern rule, a majority of the states have statutes which seek to codify the common law. United States National Commission on Reform of Federal Criminal Laws, Study Draft of a New Federal Criminal Code, s. 607(2)(d) (1970). Although a number of federal courts have stated that the preferable rule would limit the privilege to the situation when the crime involved causes or threatens serious bodily harm, they have thus far uniformly declined to impose this rule as a federal standard in civil rights cases. Jones v. Marshall, 528 F.2d 132, 140 (2nd Cir. 1975). This refusal is based on history and current status of the law of privilege, the ready availability of handguns to the populace at large (including nonviolent felons), and the needs of law enforcement in a society where violence is widespread. Until 1974, Florida was among those states in which the common law rule regarding lawful use of the privilege was in full force and effect. Cf. AGO 071-41. In AGO 071-41 this office, citing Dixon v. State, 132 So. 684 (Fla. 1931), City of Miami v. Nelson,186 So.2d 535 (3 D.C.A. Fla., 1966), and Gordon v. Alexander, 198 So.2d 325
(Fla. 1967), concluded that, in making an arrest for a felony, an officer having reasonable grounds to believe the individual had committed a felony was entitled to use that degree of force reasonably necessary to effect his capture, even to the extent of killing or wounding. This is true even though the life of the person making the arrest has not been endangered. See 6A C.J.S. Arrest s. 49, pp. 112-114. These Florida decisions clearly follow the "traditional rule" discussed, supra, regarding use of the privilege. However, in 1974, the Florida Legislature abandoned the traditional common law rule in favor of the "modern rule" advocated by the Model Penal Code. Chapter 74-383, Laws of Florida. In the 1974 Criminal Code Revision, the Florida Legislature authorized the use of deadly force only in certain limited situations. Generally, the use of deadly force was authorized by an officer only when necessary to prevent death or great bodily harm to himself or another or when he reasonably believes both that: Such force is necessary to prevent the arrest from being defeated by resistance or escape; and the person to be arrested has committed or attempted a felony or is attempting to escape by use of a weapon or otherwise indicates that he will endanger human life, or inflict great bodily harm unless arrested without delay. In 1975, the Legislature significantly amended Ch. 74-383, s. 776.05, F. S., to eliminate the restrictions imposed by the 1974 revisions regarding endangering human life or infliction of great bodily harm. In legal effect, the 1975 amendments to s.776.05, F. S., have codified the traditional common law rule and returned Florida to the law as it existed at the time AGO 071-41 was issued. See City of St. Petersburg v. Reed, 330 So.2d 256, 257
(2 D.C.A. Fla., 1976). Thus, the answers to your specific questions involve an analysis of s. 776.05, read in light of the common law principles it codified, regarding use of deadly force by a police officer. AS TO QUESTIONS 1 AND 2: Section 776.05, F. S., provides: 776.05 Law enforcement officers; use of force in making an arrest. — A law enforcement officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest or when necessarily committed in retaking felons who have escaped or when necessarily committed in arresting felons fleeing from justice. Section 776.06, F. S., defines "deadly force" as force which is likely to cause death or great bodily harm, including, but not limited to, the firing of a firearm in the direction of a person to be arrested even if there is no intent to kill or to inflict great bodily harm and the firing of a firearm at a vehicle in which the person to be arrested is riding. In examining these statutes, I am of the view that the term "felon" as used in s.776.05, F. S., is a descriptive reference used by the Legislature in order to differentiate between categories of crimes, i.e., felonies as opposed to misdemeanors, and was not intended to be limited to persons actually convicted of a felony. See Taylor v. Commonwealth, 156 S.E.2d 135, 207 Va. 326; Mack v. State of Delaware, 312 A.2d 319; Black's Law Dictionary, pp. 743, 744; s. 10, Art. X, State Const. The felony/misdemeanor distinction has been recognized because it is generally agreed that an arrest for a misdemeanor does not justify the use of a firearm even though the criminal is in flight and there is no other possible way to apprehend him. Prosser, Torts (4th Ed.) s. 26, p. 135, and cases cited at n. 5; Comment, 31 La.L.Rev. 131, 134. Moreover, "felon" has been defined as a person who commits, or one who has committed, a felony. See 36A C.J.S. Felon, at p. 253; Black's Law Dictionary, at p. 743. The title of Ch. 75-64, Laws of Florida, which amends s. 776.05, F. S., makes it clear that the statute is concerned with and authorizes law enforcement officers to use "deadly force when retaking or arresting a fleeing felon." If an officer has reasonable grounds to believe that a felony has been or is being committed, that the person to be arrested has committed or is committing it, and that the person to be arrested is fleeing from or escaping arrest, the officer, pursuant to s.776.05, is justified in using any force necessarily committed in retaking or arresting such person, provided that no more force is used than is reasonably necessary to apprehend the person to be arrested or to effectuate such arrest. This view is in accord with AGO 071-41, supra, in which a police officer was said to possess the authority to use deadly force to apprehend a fleeing armed or unarmed felon as a last resort when the officer reasonably believes that the person to be apprehended has committed or is committing a felony. In City of Miami v. Nelson, supra, the court, in response to a claim for money damages for a shooting arising out of the arrest of Nelson for attempted breaking and entering, stated at 538: Having reasonable grounds to believe J. C. Nelson had committed a felony, the officers were entitled to use force which was reasonably necessary to capture him, even to the extent of killing or wounding him. See: 6 C.J.S. Arrest s. 13, p. 613 (now 6A C.J.S., Arrest s. 49); Commonwealth v. Bollinger, 198 Ky. 646,249 S.W. 786. (Emphasis supplied.) This statement in Nelson was cited with approval by the Supreme Court in Gordon v. Alexander, 198 So.2d 325, 326, 327 (Fla. 1967), in which the court denied Alexander's claim for damages against a police officer and city for the officer's shooting of Alexander whom the officer was attempting to arrest for breaking and entering, a felony. Recently, the District Court of Appeal, Fourth District, considered the question of the use of deadly force in effectuating an arrest and concurred in that portion of AGO 071-41 which dealt with the questions posed by your inquiry. See Chastain v. Civil Service Board of Orlando, 327 So.2d 230, 232 (4 D.C.A. Fla., 1975). Also see City of St. Petersburg v. Reed, supra, in which the court stated that the decisional rule of Nelson and Alexander had been codified in s. 776.05, F. S., by Ch. 75-64, Laws of Florida. AS TO QUESTION 3: Section 901.17, F. S., provides: A peace officer making an arrest without a warrant shall inform the person to be arrested of his authority and the cause of arrest except when the person flees or forcibly resists before the officer has an opportunity to inform him or when giving the information will imperil the arrest. Additionally, in the event an arrest warrant has been issued, the officer must advise the person to be arrested of that fact unless the person is fleeing or the recital of this information would imperil the arrest. Section901.16, F. S. Thus, when ss. 901.17 and 776.05, F. S., are construed together, an officer must inform a person to be arrested of the cause of the arrest and his authority, AGO 071-41, except when a person flees or forcibly resists before an officer has the opportunity to inform him or when giving the information would imperil the arrest. The officer is authorized to use deadly force if he reasonably believes that a felony has been or is being committed, if he reasonably believes that the person to be arrested has committed or is committing it, and if he reasonably believes that the use of deadly force is necessary to retake a felon who has escaped or to arrest a felon fleeing from justice, provided that no more force is used than is reasonably necessary to apprehend such felon or to effectuate an arrest. The term "fleeing from justice" has been defined as removing oneself from, or secreting oneself within, the jurisdiction where the offense was committed, or leaving one's home, residence, or known place of abode or concealing oneself therein with intent, in either case, to avoid detection and prosecution for some public offense. 36A C.J.S. Flee, p. 753; 17 Words and Phrases, pp. 252-256; Black's Law Dictionary, Rev'd. 4th Ed., at p. 767. One "flees from justice" when one absconds or flees from the arresting or prosecuting officers of the state with a purpose to avoid detection. State v. Berryhill, 177 So. 663, 665 (La. 1937). AS TO QUESTION 4: The statute makes no distinction between armed and unarmed felons. The only differentiation recognized by the Legislature in enacting s. 776.05, F. S., is between felons and misdemeanants. Accordingly, I do not believe the Legislature intended to limit the power of police officers to effectuate arrests of felons fleeing from justice to those instances where the person to be arrested is armed. Attorney General Opinion 071-41 is to the same effect and is hereby confirmed and ratified. It might be noted that the facts recited in Reed, and in Nelson and Alexander, supra, indicate that the involved felons were unarmed. AS TO QUESTION 5: I must again reiterate what was stated in response to question 4 — since the Legislature made no such distinction when enacting s. 776.05, F. S., none was intended and cannot be implied. Accord: City of St. Petersburg v. Reed, supra, at pp. 257-258, stating that the "right [to use deadly force] does not depend on the type of felony which has been committed"; AGO 071-41. It should be noted, however, that the constitutional due process issue posed by this question is presently the subject of litigation in several federal courts under the federal civil rights acts. Recently, many state legislatures have enacted statutes similar to s. 776.05, F. S., which in essence authorize the use of deadly force by police officers when necessary in order to apprehend felons fleeing from arrest. As of 1975, thirty-four states authorized the use of deadly force by police officers under such circumstances. Mattis v. Schnarr, 404 F. Supp. 643 (E.D.Mo. 1975). Recently, the Second Circuit Court of Appeals upheld the constitutionality of such a Connecticut statute, stating: Here we are dealing with competing interests of society of the very highest rank — interests in protecting human life against unwarranted invasion, and in promoting peaceable surrender to the exertion of law enforcement authority. The balance that has been struck to date is very likely not the best one that can be. In an area where any balance is imperfect, however, there must be some room under s. 1983 for different views to prevail. The Connecticut rule carries with it the defects explicated above; it makes no distinction between felonies and therefore could be argued to involve an element of irrationality. It also creates an anomalous asymmetry to the privilege relating to the use of force for preventing the commission of felonies. Furthermore, it is contrary to the recommendations of the new proposed federal criminal code, see U.S. National Commission on Reform of Federal Criminal Laws, Study Draft of a New Federal Criminal Code s. 607(2)(d) (1970), and the statute law of one of the other two states in this circuit, New York, N.Y. Penal Law s. 35.30(1)(a) (McKinney 1975), although apparently not of the other, 13 Vt.Stat. Ann. s. 2305 (1974). This would seem peculiarly to be one of those areas where some room must be left to the individual states to place a higher value on the interest in this case of peace, order, and vigorous law enforcement, than on the rights of individuals reasonably suspected to have engaged in the commission of a serious crime. . . . While the Fourteenth Amendment may require us to make an independent assessment of the fairness of the state rule, however, we are today interpreting s. 1983, and within that statute the states must be given some leeway in the administration of their systems of justice, at least insofar as determining the scope of such an unsettled rule as an arresting officer's privilege for the use of deadly force. Further, in the light of the shifting history of the privilege, we cannot conclude that the Connecticut rule is fundamentally unfair. Also see Jones v. Marshall, 383 F. Supp. 358
(D.Conn. 1974), and compare, Clark v. Ziedonis, 368 F. Supp. 544
(E.D.Wis. 1973), aff'd, 513 F.2d 79 (7th Cir. 1975); Smith v. Wickline, 396 F. Supp. 555 (D. Okla. 1975); Schumann v. McGinn,240 N.W.2d 525 (Minn. 1976). A similar constitutional challenge to a Missouri "deadly force" statute is presently pending before the Eighth Circuit Court of Appeals. I have been informed that this case, Mattis v. Schnarr, 502 F.2d 588 (8th Cir. 1974), on remand,404 F. Supp. 643 (E.D.Mo. 1975), was scheduled for oral argument before the Eighth Circuit en banc on August 17, 1976.